Good morning, ladies and gentlemen. Our first case for argument is Johnson v. Diakon Logistics. Mr. Leikin. Thank you. Can you hear me okay, Your Honor? Yes. Thank you. May it please the Court, my name is Harold Lichten. I have the pleasure of representing the plaintiffs. I ask to reserve two and a half minutes for rebuttal. It is clear in this case that Illinois has a materially greater interest in this case than Virginia. Since all of the work was performed here in Illinois, the plaintiffs reported to locations in Illinois. The plaintiffs all resided in Illinois. They all signed their contracts in Illinois. Well, Mr. Lichten, what you've just stated raises the principal question in my mind, whether the home state exception to the Class Action Fairness Act doesn't require this case to be an Illinois court. If all the work is done in Illinois, it has to be in order to be covered by the Illinois statute, and all the plaintiffs are in Illinois. It sounds like more than two-thirds of the plaintiffs are in Illinois for the purpose of 1332 D-4. So why doesn't this case belong in state court? I have not addressed that, Your Honor. It did not come up. I know, but jurisdiction is the first issue in every case. Well, I do not have an answer to that, Your Honor, because I have not prepared on that issue. I'm sorry. Well, you should have. As I say, jurisdiction is the first issue in every case, and briefs are supposed to address it. It may be that we will need supplemental briefing from the parties, and those supplemental briefs will have to address the fact that when this suit began, two of the defendants were also from Illinois, and normally jurisdiction is assessed when the case begins. So it seems to me we may have a fairly complex jurisdictional problem before we can even think about the merits. Well, the case is also brought under CAFA. I do think it satisfies the CAFA requirement. Under what? Class Action Fairness Act, Your Honor. Yes. If you would use real words, that would help, but that's what I've been talking about, the Class Action Fairness Act. That's 28 U.S.C. 1332 D. So just to give you a hand, excuse me because I can barely talk, but there are exceptions to the jurisdiction provided for these big class actions under 1332 D, but whether they're jurisdictional in nature, whether they are not, how they are treated is, as Judge Easterbrook says, a complex question. And this case definitely has, as you said, Illinois written all over it, so one would need to get through that discussion before we get to the merits. And relatedly, Mr. Licton, as you're thinking about it, and make this comment for whatever benefit it may have for your adversary, think about whether the home state exception imposes a mandate or confers some discretion upon the federal court. Yes. You'll want to discuss the difference between D.3. and D.4. D.3. uses the word may dismiss, and D.4. uses the phrase shall dismiss. As we say, this could be complicated. Why don't you proceed? Okay. So I will address that in a supplemental brief. Thank you. It hasn't been raised so far in the case because it is clear that Illinois, as you've pointed out, has a materially greater interest in this case than Virginia. Can I back this up for a second, Mr. Licton? What you're talking about really boils down to the question whether, assuming, of course, there is some sort of diversity jurisdiction, this is going to be a case that arises under a state law. And the question is going to be, under Claxon, what law would Illinois choose for this matter? And it takes you pretty quickly to the question whether the Illinois courts regard this wage – I'll just call it the wage statute. There's no way to pronounce I-W-P-C-A. So the wage statute. Is that one of those things that is mandatorily a part of a contract? Many rules of contract are simply default rules, and the parties can negotiate around them. Some rules are not. And so what you need to show is how the Illinois courts would regard this kind of clause. Absolutely. And starting in 1987, in Brzezinski v. Transport Services, the Appeals Court of Illinois stated, and this is in our brief, by enacting the I-W-P-C-A, the legislature currently indicated that it is the public policy of the state to ensure the proper payment of wages to employees by employers. Therefore, we find that Brzezinski's claim arises under – Counsel, we need to avoid begging the question. Of course, the Illinois law says it has to ensure the proper payment of wages to employees. The contracts here designate the plaintiffs as independent contractors. So to be technical, the question is, would Illinois – is there some principle of Illinois law that would disregard a contract designating particular persons as independent contractors rather than employees? Do we have Illinois cases about that question? Yes. Well, I was before you in 2014 in the BVEX case. Illinois has enacted one of the most stringent tests for independent contractor misclassification in the United States, and employs the so-called ABC test, making it a presumption that all workers for a company are employees. So you're saying Illinois would override. You're not getting to our question, which is whether we know whether Illinois would disregard a contract designating particular people as independent contractors. If there were no contract, then Illinois law on how you identify an employee versus an independent contractor is straightforward. But there is a contract. That's what we need to worry about. Well, but with all due respect, that's what the restatement is for. The restatement says you do disregard law chosen in a contract if to do so would violate a fundamental public policy of the state having the most material context. Could I try once more? I'm not asking you to point to a restatement. I'm not asking you to tell me what the Illinois law of independent contractors is. I'm asking whether there are Illinois cases telling us when the state will disregard a contract specifying who is an independent contractor. Are there such state cases? There are such state cases. BVEX was one of them that I was involved in. There are other cases. Those go to the merits of this case. So I haven't addressed them in the brief. But yes, all of these cases involving independent contractors, there's an independent contractor agreement. But the Illinois has directed us to apply the ABC test to determine if that's true. So Illinois, you're saying, says, OK, here's this contract that we, as a matter of state policy, are going to characterize this using the tests set forth by the Illinois courts and the Illinois statutes? That's the whole purpose of the ABC test. If you didn't have the ABC test. No, look, that test is what happens if there is no contract. No, that's not correct, Your Honor. That's simply not correct. All of the cases that I have been involved in, and I've been involved in independent contractor cases around the country, whenever you have a so-called independent contractor arrangement, they always make you sign a contract saying you're an independent contractor. That's how they try to get around the statute. But that's not what courts have looked at. I could cite you hundreds of cases from around the country and a few from Illinois that have found that you look at what the actual. Let me tell you what my problem is. The briefs cite quite a number of cases on this general problem. And they almost all seem to be decisions of federal district courts, which, you know, for our diversity jurisdiction purposes don't count. So if you want us to look at a particular state case, which which is the first one we should look at? I think the cases that talk about the IWPCA and the fact that this constitutes an important public policy or Brzezinski versus Transport Services, Hope versus Abrams. You say those are cases where Illinois courts have overwritten a contract specifying independent contractor status. Nowhere. States have overridden a designation of a different choice of law being used. There are a number of cases that have overridden independent contractor designations in a contract and instead apply the ABC test. The Illinois FedEx case. I don't have the site, but there was a multi-district litigation involving FedEx. There was a case involved. It was decided by this court. It was decided by this court. That's true. But the court of the Seventh Circuit, Judge Miller, relied upon cases from Illinois that had held that. Look, the district court opinion was reviewed by this court. Why are you relying on the district court's opinion in that multi-district case rather than this court's opinion? It's a little peculiar. You know what happened in this court. We certified this question to a state court. And the parties then settled after the state court returned its decision. Right. And one of the questions I'm going to ask is whether we shouldn't certify this one, too. Just like we certified the FedEx multi-district case. Well, as we pointed out in our brief, I certainly believe that you could. It would be appropriate if there's any question in this court's mind with respect to whether or not the Illinois wage payment collection day constitutes a fundamental public policy. And it includes within that act the definition of an employee versus independent contractor. It's a very strict definition. But if it's a question in this court's mind as to whether that articulates a fundamental public policy of the state of Illinois, you should certify it. And this would be right for certification. I don't think you need to do that because I think the case law is so clear. But getting back to your question, Judge Esterbrook, although I'm sorry that I didn't bring those cases with me because that was not the issue that's been briefed in any of the briefs. I can provide to the court a number of cases that demonstrate clearly that when a court in Illinois decides whether someone is an independent contractor or an employee under the strict ABC test, they apply the statute and they do not find at all persuasive the fact that they were called independent contractors in the agreement because that's what every company does. If that were the test that you could just make that designation, despite what the actual facts on the ground are, you would never be able to overcome misclassification, which is a serious problem in the United States and in Illinois. If I may, there are other... Mr. Lichten, I know we're moving in a lot of different directions here with you hearing some questions and concerns that the court has. Can I shift gears in a different direction? Sure. In your blue brief, in your opening brief, you seem to my eye to only analyze the choice of law provision in what you all are referring to as the pre-2015 version of the agreement. Yes. Okay. Do you concede that the post-2015 version, that the provision in question is worded broadly enough to pick up the statutory claim? In other words, I'm trying to figure out why both sides are not addressing both versions of the agreement. Because the class period, or the alleged relevant period, runs through the change in the provision. I think it goes to 06 or 04, I think pretty close to the present day. And the agreement changed. It got broader. At a minimum, you can say it got broader, but neither side seems to pay much attention to that. Yes. Well, it's a good question, Your Honor, and I think it follows. I think clearly the first agreement doesn't even remotely suggest that Virginia statutory law would apply to a wage claim. It simply says the agreement shall be construed and governed in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law rules. Then the second sentence, which is the forum selection clause, says company and contractor further agree that any dispute related to the performance of services by contractor of the terms shall be litigated in federal court in Manassas, Virginia. So I think it's clear that that is narrow enough that there's no way that someone signing that agreement would know that they were waiving or giving up their right to bring statutory Illinois claim. The second agreement is broader. Yeah, go to the second one. I get that. The second agreement is broader, and I would concede that that is a closer question. I still think, though, that since the purpose of making someone sign an agreement, particularly in the situation where it's employer-employee or a company with lots of resources and someone with little resources, the whole sign of Kwanon should be noticed, whether you would know from signing this that you're giving up certain rights and forcing yourself to litigate under different rights. And I think even the broader language does encompass that, but I do think it's a closer question, I would concede. I wonder, should you sort of be doing this in two layers? Layer one was that these two different contracts didn't cover this topic at all anyway. And as for that, the pre-2015 is certainly your stronger point, much weaker afterwards. But I thought the second layer was just as if Illinois had a minimum wage, you couldn't contract out of that, you can't contract out of the applicability of the wage statute either that Illinois has. And then it doesn't really matter how broad the contract clause is, because if it's choosing Virginia law anyway, you can't do that any more than you could contract out of other mandatory rules of Illinois law. It's interesting that we've now been sitting here for a long time and we haven't talked about, and this is to answer your question, what I think is the main issue in the case. You can do that depending upon whether you can meet the restatement. Because Illinois courts have said so, not because the restatement is any great shakes, but yes. Yes, exactly. Illinois clearly follows and the Illinois Supreme Court has saying we follow 187.2 of the restatement. So in some of these cases where the courts have gone the other way, some lower court cases, such as IOSH, where the question was whether Illinois or Ohio law applied, you could argue that there wasn't a fundamental difference between the laws because Ohio has a wage statute. Perhaps Illinois is a better statute and gives you more damages, but they're still similar, but that analysis was never made in those cases. Here I'm saying that it is possible that if they designated a statute, a law of a state that actually had some protection for wage rights, including illegal improper deductions, or had a statutory test for independent contractor misclassification, which was similar to Illinois, it might not violate a fundamental public policy of Illinois to apply that. So I'm not saying that all choice of law provisions are dead. You can't have them. I'm saying that you make the analysis under 187.2. And here, where Virginia had no wage statute at the time, had only a common law master and servant test for independent contractor, that the decisions are so different that they're clearly outcome determinative, and that is what violates Illinois public policy. Are you conceding that as a matter of Virginia law, the plaintiffs are indeed independent contractors? I'm not conceding that. However, the plaintiffs have no claim under Virginia law, because what would be the fact that they under the common law test may still be found to be employees doesn't give them anything because there's no there was no wage statute at the time. There was no prohibition on deductions. Our claim is that because of the independent contractor misclassification, they were really employees. The statute in Illinois strictly prohibits when deductions can be taken from one's pay. We can all think of when the waiter breaks glasses and they used to take money out of their pay. That can't be done in Illinois. You can't force someone to pay for their unfortunate mistakes on the job. But Virginia has no prohibition. But Illinois, and this is our contention, sees this as a fundamental public policy because they have said time and time again, the legislature has said the attorney general has said case law has said that these are fundamental public policy rights, the right to be paid wages and not have money taken out so that you can't go home and feed your family. If that is a fundamental public policy, which we say it is, then you can't contract around that by forcing on workers in Illinois, a statute that provides no rights whatsoever, not similar rights, but no rights. This has come up in a number of occasions in the biometric privacy realm, in the restrictive covenant realm, and the Real Estate Commission's Act. Thank you. Mr. Andrew Scavage. May it please the Court. My name is Chip Andrew Scavage. I represent Diacom Logistics. I want to start by addressing the Court's jurisdictional issue that you raised with opposing counsel. I think part of this is it's a mischaracterization of the facts to say that this is entirely Illinois-focused. Under CAFA— Mr. Andrew Scavage, you're going to have to raise your voice. This is a very big room, and that microphone records but does not magnify. No problem, Your Honor. Here there are 85 class members who have business addresses that are within Missouri. This is an interstate regional case. Diacom is a Virginia company that's incorporated in Delaware and has its principal place of business in Virginia. It is not just an Illinois-focused case. With 85 businesses being Missouri businesses, I don't believe the home state exception is applicable here on the jurisdictional point. Why? What is it in the language that makes it inapplicable? So far as I can see, it's the Class Action Fairness Act and nothing else that brings this case to federal court, because otherwise we don't have $75,000 in controversy between every plaintiff and every defendant. That is correct, Your Honor. Right? So D-4 says that if two-thirds are from the same state, the Court shall dismiss. And I believe there's a split of authority on this, but that the home state exception is discretionary. No. D-3 is discretionary. D-4 is mandatory, although it has the peculiarity that it says shall decline to exercise jurisdiction. So it's been construed as a form of abstention requirement, but we've also said that courts can and often should raise abstention on their own. But there is a big difference between may in D-3 and shall in D-4, and that's why I raised D-4 as the critical matter in this case, the potentially critical matter. It's obvious that neither side is prepared to discuss this. So at the end, I'll be calling for supplemental briefs. Please proceed. On the enforceability, there are several—Illinois, as the Court has mentioned, Illinois has a public policy that favors choice of law provisions and enforcing general contracts between the parties. In order to demonstrate— But that doesn't mean that Illinois, for example, would permit a contract that adopted—suppose the minimum wage in Illinois—what is it now? It's probably $15, but let's suppose it was $16, and let's suppose the minimum wage in Virginia is $14. Illinois would not enforce a contract that said we're selecting the Virginia law of minimum wage, even though, of course, in general terms, courts all over this country, including courts in Illinois, are perfectly fine with choice of law clauses, choice of forum clauses. But it doesn't mean that there aren't some laws that have a mandatory character to them. And what we're trying to find out, at least what I'm trying to find out, is whether this wage statute, the Illinois Wage Payment and Collection Act, is the kind of thing that if you're doing business in Illinois, you can't opt out of it. And it looks to me as though Illinois courts have said, indeed, it is the kind of thing you do not have the right to opt out of. So I believe there's a difference between the minimum wage laws and the Wage Act here. And I believe because the Wage Act is contractual in nature, it enforces an agreement between the employer and the employee. Well, it doesn't, though. I mean, it bans all deductions by employers from wages or final compensation unless they're made with— So you can write all the contracts you want, saying all of these deductions can happen without express written consent. But the Illinois Wage Act says you can't do that. So it's not really enforcing an agreement. It is imposing mandatory terms on a party that's dealing with somebody else. It is saying deductions—you cannot take deductions except in certain circumstances. And one of those is when there's express written consent given by the employer. Could you raise your voice, please? Yes. I'm sorry, Your Honor. So one of them is when there's express written consent given by the employee. And no one disputes that you need an agreement for the Wage Act to even apply. And the Illinois Attorney General in the Costello case took the position that it is contractual, that the Wage Act is a contractual statute. You could contract around— But it goes further than the contract. Okay, so take any contract or any agreement. Take, for example, Section 9. The very last sentence of Section 9 of the statute overrides any contractual provision by its expressed terms. It says, the acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this act and shall be void. By its terms, it voids contractual provisions to the contrary. Your Honor, I would submit that it voids waivers and releases in a very narrow circumstance, which is that when you're trying to pay wages and you try to get a release as part of that, or you condition the payment of wages on a release. But there's much more to the statute than that. And, you know, the Illinois courts have said that this is—that it restricts, as it were, the right of the parties to contract, and it imposes certain terms on them. It does, but what no Illinois court has said is that a choice of law provision is invalid in the face of a Wage Act claim. Well, you say no Illinois court has said that. And Mr. Licton says lots of Illinois courts have said that. And he pointed us to look at two. I don't think both can be correct. Lots and none are about polar opposites. Your Honor, I have not seen a single Illinois case that says that the Wage Act constitutes a fundamental public policy that requires the court to invalidate a choice of law provision. But only in part. I mean, I'm sure that there are all sorts of things under this contract that could be governed by Virginia law. But choice of law, as you know, is done on an issue-by-issue basis. It's not done in gross. And so, you know, there might be many other provisions of Virginia law that can happily move forward since your client has put its home state law in the contract. But this particular issue might not be something that Illinois leaves to the discretion of the parties to allocate between themselves. Well, as the court recognized, Illinois does follow the Second Restatement. And the Illinois state courts have said that the Second Restatement is applicable. And what Illinois Supreme Court has also said is when you're trying to determine whether or not a statute represents a fundamental policy of the state, you look at what the judicial decisions and what the legislature has done. The legislature has done a few things here with the IWPCA. It has invalidated certain contractual provisions, but has not invalidated choice of law provisions, right? Well, what it has said is that certain things can't be done by the employer. First of all, it said we are going to characterize this relationship as either employer-employee or contractor-independent agent sort of arrangement. So number one, you've got to follow the statutory test. Number two, it carves out from the party's otherwise very broad freedom of contract a few things that just can't be there. You, the employer, cannot say we're going to deduct all this stuff from wages without express written consent of the employee. It does, Your Honor, but it shows that the legislature— And so all they're saying is that part of Illinois is going to govern that one little slice of—it's a big, important slice to them, but it's just a slice of the relationship. What that also shows, though, Your Honor, is the legislature knew how to either exclude or invalidate certain contractual provisions or clauses when it was enacting the statute, right? It did not do that for choice of law provisions. I don't think we're talking the same language here because what it's—I'm telling you there's probably nothing wrong with the choice of law clause for many, many parts of the contractual relationship. It's just that the IWPCA, if you insist, or the Wage Act, bans deductions by employers from compensation unless they're done with the express written consent given freely. It can't be coerced, and so Illinois—as states do, every state has some laws that override freedom of contract. I mean, I can think of the Wisconsin Fair Dealers Act. I can think of all sorts of statutes that do that. It's not unusual. And we have had cases about whether you can opt out of that law by a choice of law clause. Yes, we have. When you apply the secondary statement here, though, you have to find that even if there is a fundamental policy, applying Virginia law would violate that policy, right? And you need to look at would plaintiffs have a remedy under Virginia law, or—and here plaintiffs would, right? They could bring a federal leasing regulations claim if Virginia law applied, right? And the federal leasing regulations requires the parties up front to agree to what kinds of deductions are going to be taken. Those agreements need to be clear, and they need to state the amounts that are going to be deducted. If that was—if DICON violated the federal leasing regulations, plaintiffs could bring a claim under that law. It could bring a quantum merit or unjust enrichment claim under Virginia law, and it could argue that it was— The district court thought not because there was a contract between the parties, and I can't think of a state that allows you to go under unjust enrichment if there's a contract. On top of that, how is that responsive to the point that—the way I—is it the third amended complaint that's in play here? Third amended. Third or fourth? The third amended. Okay. So when I look at the third amended complaint, there's express allegations in there that Section 9 of the statute and the express written consent requirement has not been complied with, right? So how does any of the stuff under Virginia law, quantum merit, unjust enrichment, how does that have anything to do with an alleged lack of compliance or an alleged violation of this statutory requirement? This is all about whether there's been consent to these deductions. The question as to the quantum merit point, right? The question is can plaintiffs recover—do they have a remedy under Virginia law? A remedy for what, though? For the violation they're trying to seek under Illinois law. For the violation of Illinois law, Virginia law is going to say, oh, well, we're going to— Yeah, I mean the violation is of this statute. They're trying to recover deductions, right? The deductions that were taken to them that they allege were illegal. Can they recover—can they seek remedy for those deductions under Virginia law? And the answer is yes, they can. What in Virginia law makes those deductions illegal? If plaintiffs can prove under a—they rescind the contract, right, and they can prove under quantum merit that they provided services and that the deductions were a benefit to DIACON that they should not—DIACON should not have received, then they can recover for those deductions under that kind of claim. They can also recover under— It's wildly fantastic to me because, you know, all DIACON was doing—and this is the stuff of everyday contract law— is it was simply allocating the risk of these various mishaps and the like, and it was pushing it away from itself and onto the backs of the employees. I don't know why that needs—why that's unusual except for the fact that Illinois law happens to regulate that shift of risk and shift of financial responsibility, but I don't—that if Virginia doesn't have that law, it would shock me if a Virginia court saw anything wrong with allocation of risk of broken glasses by a waiter or, you know, a banged-up truck vendor or whatever else happens. In order to get there, though, Your Honor, you need to find that the Wage Act is a fundamental policy of the state, right? And the state courts say that all the time, actually. The state courts say that it's a public policy, right? The cases that plaintiffs in the state have cited, the Attorney General has cited, say that it's a public policy. That doesn't necessarily mean that it arises to the level of fundamental public policy. Has the Illinois Supreme Court defined to your satisfaction fundamental public policy? What the Illinois Supreme Court said is you have to look at what the legislature has done, how public officials have acted, and the case law. When you look at the history of the statute as it's been traced, the amicus brief from the legal clinic at the UFC Law School is helpful on this point. Look at all these iterations of the statute. And then you look at the particular claims at issue here. And I'm going to come back to that last sentence of Section 9. How is it not the fundamental public policy of Illinois? I mean, it's a pretty significant statute. It's been on the books a long time. It's been amended a bunch. It has been amended a bunch, Your Honor. And then we have a claim that's brought under – claims that are brought under Section 9. And the very last sentence of Section 9 seems to all but come right out and say, this is the fundamental public policy of the state, these prohibitions. I mean, it doesn't use those words, but I don't know how else you interpret it. On that narrow issue, on the waiver. Isn't that what the lawsuit's about? No, the lawsuit is not about a waiver release. The lawsuit is about a choice of governing laws. No, no, no. The underlying – whatever claims are in the third amended complaint aren't – I mean, I can get it out, but I thought the plaintiffs were complaining about unauthorized deductions that violate the statute. They are, Your Honor. They are. Okay. And so it is no doubt that the wage act represents a public policy of the state that is important to the state. But what we do know is that the legislature has not said that choice of law provisions are invalid, and there have been several cases now which have found that wage – that have applied choice of law provisions in the face of wage act claims and found that they did not violate a fundamental public policy. Decisions in Illinois? Decisions in federal district courts. Decisions in Illinois by the courts of Illinois? No. No, Your Honor. Yeah. Well, that's – as I said to your adversary, the briefs freely cite district court decisions, which together with $3 will get you a cup of coffee at Starbucks. It doesn't count for anything. We need to figure out what Illinois is saying, and that's why I was pursuing the questions both to your adversary and you. And I'm still troubled by the fact that your adversary says there are lots of Illinois cases saying that you can't use choice of law clauses to get around these statutes, and you saying there are absolutely positively no such cases, and you can't both be right. We need to figure out what the genuine law of Illinois is. And I think, Your Honor, you need to look at what the legislature did. And to your point about – I'm not asking about the legislature. I'm asking about case law. And I understand, Your Honor. But you need to look at whether or not the policy is fundamental. And to do that, you need to look at what the legislature did. And we do know one thing, that the legislature has reacted when federal courts, in Enger, for example, have enacted – have given down a decision that do not comply with the tenets of the Wage Act. It has amended to respond to that. So the Attorney General footnote notes that. In 2019, the legislature amended the Wage Act to reply to Enger, to the Enger decision. It has not done so in the face of these other decisions, even though it's amended. Why in the world should the state legislature amend a state statute in response to a federal district court's decision? Because the federal district court's decision violates the fundamental public policy of the state. If it did, then it would amend to make clear that that is not the case. Illinois would just not follow it. I mean, I can think of all sorts of examples over my years on this court where we, at the Seventh Circuit level, have made a prediction about what the law of one of our three states is. I particularly remember an Indiana case where we confidently predicted that Indiana would not regard a certain accident definition and insurance policy as fitting the facts of that case. And the Indiana courts came right back and said, oh, no, you were wrong. We hope we get more than 50% of them correct, but Judge Wood is right. State courts disagree with us a lot. But we don't expect state legislatures to amend their laws because of our errors or federal district court's errors. We expect the state judiciary to speak, which is why I keep asking about the state judiciary. Or is the problem that, for some reason, all cases like this seem to end up in federal court? And if that's why what we've got is a bunch of federal district court decisions, that's a strong argument for certification. Yeah, maybe you could say a word about certification because it's come up now several times and even comes up in passing in the briefs. Sure, Your Honor. So the test for certification is that it needs to be genuine. Yeah, we know what the test is. I mean, is this really all that uncertain? Because we did come to a point in Wisconsin with the Fair Dealers Act that the parties were constantly choosing diversity jurisdiction, constantly choosing diversity jurisdiction. The Wisconsin Supreme Court had not had the opportunity to develop its own law with respect to a very important part of that statute. And so we finally said, fine, we're certifying to you. This is your backyard. And they generously accepted the certification and gave a definitive answer, which was all that anybody needed. I do not think it's genuinely uncertain. When you look at what the legislature has done through its amendments and you look at the case law that is out there, I don't think it's uncertain. I think the legislature has shown that certain waiver provisions are unenforceable. It has not done so with the choice of law provisions. Also, the other part of the test is why is the question that narrow? You keep going back to they have not spoken as to choice of law provisions. Why is the question that narrow? Because that's what's at issue here, Your Honor. And the waiver is different than a choice of law. You think your adversary would agree with that? I'm sure he would not. Right. I mean, I'm just not sure at all that the question is that narrow. I'm thinking of the question as do the substantive prohibitions and limitations in the statutory terms that are implicated by the allegations in the third amended complaint reflect the public policy of the state of Illinois or whatever the fundamental public policy of the state of Illinois? I'm out of time. I may answer your question. Sure. Of course. As long as we are asking, you can keep answering. And I think the answer, Your Honor, is it does not because the legislature has shown that it knows. No, no, no. I thought what you were saying, Mr. Andruskavich, is that's not even the right question. I thought you were saying the question that I'm asking you is irrelevant. No. What I'm saying is there is a fundamental policy in Illinois of freedom of contract, right? In order to override that, plaintiffs need to identify, show that the Wage Act is a fundamental policy as to taking these deductions would violate a fundamental policy. Right. So, in other words, the substantive prohibitions or limitations that are imposed by the Illinois legislature in the statute as opposed to a choice of law provision that was agreed to by contract. But to override that, what Illinois follows is that— Override what? To override the choice of law provision under the second restatement, which Illinois follows, right, you need to not only identify that as fundamental, which we say that it is not, but also that applying Virginia law would violate whatever fundamental policy is identified, right? And here, because they could pursue other remedies, which we've discussed, this court should not override the party's choice of law. Thank you. Thank you, counsel. Mr. Licton, we kept Mr. Andruskavich up a little extra, so I'll give you a minute for rebuttal. Okay. And taking your—heat of your advice, I'm only going to cite Illinois state cases. First, for the proposition that the wage statute, the IWPCA, reflects a fundamental public policy of the state of Illinois, I would ask the court to look at the Brzezinski case, which is in our brief, in which the court says, quote, of Illinois public policy, which exists independently of the party's collective bargaining agreement, and they're referring to the wage act. That was held more recently to be the case in Hoke v. Adams, another state case. Then with respect to the issue of applying the restatement to employment claims in Illinois, where there's a choice of law provision in the contract, which is different in the—with respect to the Illinois Sales Representative Act, with respect to the restrictive covenants that are put into contracts of usually executive employees, and with respect to—just one more. I cite to you the following cases, the English Company v. Northwestern and Virecon, that invalidated a Washington choice of law provision in a contract because of the Illinois Sales Representative Act, which is similar to the IWPCA, was found to be a fundamental public policy. Maher v. Quality Cabinets, again, that invalidated a Texas choice of law provision in a sales representative contract in the biometric privacy field. Okay, biometric privacy, I think we can forego. We've had too many of those cases already. Thank you very much, Mr. Lichten. The court would appreciate the parties filing supplemental memoranda within 14 days, addressing two questions. One is how 28 U.S.C. section 1332d.4 applies to this case, and particularly in light of the fact that when the case began, two of the defendants were citizens of Illinois. And second, addressing the question whether we should certify any question to the Supreme Court of Illinois, and that depends in large measure on whether, as this kind of litigation has continued over the past few years, essentially all of the cases have been in federal court, so that we need to give the state court an opportunity to express a genuine state view. As I say, those supplemental memos will be due in 14 days, and when they're received, the case will be taken under advisement.